FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 2 5 2018 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
LUIS RIVERA,

                            Petitioner,

          – against –

HAROLD GRAHAM, SUPERINTENDENT OF
AUBURN CORRECTIONAL FACILITY,

                            Respondent.
--------------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**
15-cv-5461 (AMD)

**ANN M. DONNELLY**, District Judge.

The petitioner, Luis Rivera, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Rivera was convicted in New York Supreme Court, Queens County, of Burglary in the Second and Third Degrees, Possession of Burglar's Tools, and Criminal Mischief in the Fourth Degree. He was sentenced as a persistent violent felony offender to an indeterminate prison term of sixteen years to life imprisonment. The petitioner claims that the trial judge erred when he determined that counsel's peremptory challenge to an Asian juror was pretextual in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). For the reasons that follow, the petition is denied.

### FACTUAL BACKGROUND[1]

On November 4, 2010, the petitioner was arrested in Queens, New York, after he was caught breaking into an apartment. He was charged with Burglary in the Second and Third Degrees, Possession of Burglar's Tools, and Criminal Mischief in the Fourth Degree. (T. 177-78.)[2] The petitioner went to trial before the Honorable Richard Buchter and a jury in Supreme

---

[1] Because Rivera was convicted, I summarize the facts in the light most favorable to the government. *United States v. Hsu*, 669 F.3d 112, 114 (2d Cir. 2012) (citing *United States v. Riggi*, 541 F.3d 94, 96 (2d Cir. 2008)).

[2] Parenthetical references preceded by "T" are to the transcript of the trial. Parenthetical references preceded by "V" are to the transcript of the *voir dire*. Parenthetical references preceded by "S." are to the transcript of the sentencing.

1

Court, Queens County on December 14, 2011. Following a three-day jury trial, the petitioner was convicted on all the charges.

1. Jury Selection

Jury selection began on December 12, 2011. Under New York law, the parties had 15 peremptory challenges for regular jurors and two peremptory challenges for each alternate juror. N.Y. Crim. Proc. Law § 270.25 (McKinney). The petitioner's lawyer exercised ten peremptory challenges, four of which were against East Asian prospective jurors. During the first round, defense counsel exercised a peremptory strike against prospective juror Janice Chen. (V. 30-31, 88-89.) There were four prospective East Asian jurors—Jeannette Ng, Yu Ng, Lawrence Moy, and Cecilia Shou—in the second round. (V. 93-94, 110.)

Defense counsel challenged Yu Ng for cause, claiming he "c[ould] not follow the law;" the prosecutor agreed. (V. 164.) Defense counsel used peremptory challenges to strike Jeannette Ng, Lawrence Moy, and Jeannette Shou. (V. 166.) The prosecutor objected to the challenge to Ms. Shou, citing *Batson v. Kentucky*, 476 U.S. 79 (1986). (V. 166-67.) The court reviewed all of the counsel's previous challenges, and observed that the petitioner had challenged "every Asian juror," which established a pattern. (V. 167-70.) The court directed counsel to provide "race-neutral reasons" for each of her challenges to the Asian jurors. (V. 168.)

The court accepted counsel's race-neutral explanations for the challenges to jurors Chen, Ng, and Shou. (V. 168-70.) As for Mr. Moy, counsel claimed that she "didn't get enough" about him so she "didn't ask a lot of questions," "[n]o one seemed to ask him anything," and "I just didn't have [] anything in line with him." (V. 169.) Judge Buchter asked, "I am asking about any—you have nothing;" the petitioner's lawyer responded, "No." (V. 169.) The court rejected the challenge, and seated Mr. Moy over counsel's objections. (V. 169-70.)

2

Twelve jurors, including Mr. Moy, and two alternates were ultimately seated. None of these jurors were challenged for cause by either party. (V. 87-91, 165-171.)

2. Trial

The trial began on December 14, 2011. The prosecution called three witnesses: Chu Chin, Police Officer Todd Friedrich, and Danmei Yu.

On November 4, 2010, at approximately 1:40 p.m., Chu Chin was watching television in his apartment at 1677 Madison Street in Queens, when he heard a "strange rustling sound" from the hallway outside of his apartment. (T. 209-13.) He heard a "loud metallic" popping sound, turned off the television, and looked through the peephole. (*Id.*) Chin saw the petitioner[3] in the hallway, with his ear pressed to the door of Danmei Yu's apartment. (T. 219-22.) Chin backed away when the petitioner turned toward his door, and called 911. (T. 222-24.) While he was on the phone, Chin heard more noise at his door. (T. 229-32.) He saw the petitioner looking into the peephole; Chin backed away, and his doorknob "wiggle[d]." (*Id.*) Chin looked out of the peephole again, and saw the petitioner "fidgeting" and "physically turning . . . the door knob on [his] neighbor's door." (T. 230-33.) Chin heard a "popping sound." (T. 234-36.) The door to Yu's apartment swung open, and the petitioner went inside. (*Id.*)

When the 911 operator told Chin that the police was outside, Chin opened the door, and saw the petitioner with a screwdriver in his hand, gathering his belongings. (T. 238-42.) Chin said, "Yo, what the hell." (T. 243.) The petitioner said that he was looking for his friend "Mike," and ran past Chin towards the exit to the building. (T. 243-44.) The petitioner stopped when he saw the police officers outside the building. (T. 243-44.) Chin unlocked the front doors, and the

---

[3] Although Chin could not identify the petitioner at trial, he testified that the police arrested the man he saw in the hall. (T. 219-21, 244-45.) Police Officer Todd Friedrich testified that Chin identified the petitioner on the date of the crime. (T. 304.)

3

police came into the building and arrested the petitioner. (T. 244-45.)

The defense did not call any witnesses. (T. 384.)

3. Verdict and Sentencing

On December 20, 2011, the jury convicted the petitioner of Burglary in the Second and Third Degrees, Possession of Burglar's Tools, and Criminal Mischief in the Fourth Degree. (T. 451-58.)

On January 18, 2012, Judge Buchter sentenced the petitioner, as a persistent violent offender, to concurrent indeterminate prison terms of sixteen years to life for the second-degree burglary and three-and-a-half years to seven years for the third-degree burglary, and a determinate sentence of one year each for possession of burglar's tools and criminal mischief in the fourth degree. (S. 5-7.)

**PROCEDURAL HISTORY**

The petitioner, represented by counsel, appealed his conviction to the New York Appellate Division, Second Department. (ECF No. 8 at 1-27.) The petitioner argued that he was denied due process, equal protection, and a jury of his own choosing when the trial court granted the prosecutor's *Batson* challenge and seated juror Lawrence Moy over defense counsel's objection. (*Id.* at 4.) On April 2, 2014, the Second Department affirmed the judgment on its merits, holding that the trial court "properly disallowed the defendant's peremptory challenge" to Mr. Moy because his counsel's proffered reasons for the challenge—that "no one seemed to ask the juror anything," that counsel "didn't get enough about the juror, that she "didn't ask a lot of questions," and "didn't have anything in line with the juror"—"amounted essentially, to no reason at all." *People v. Rivera*, 116 A.D.3d 717, 718 (2d Dep't 2014) (internal brackets omitted). On June 12, 2014, the Court of Appeals denied the petitioner's leave to appeal.

4

*People v. Rivera*, 23 N.Y.3d 1024 (2014).

## DISCUSSION

1. Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a federal court reviewing a state prisoner's habeas petition give deference to a state court's decision on the merits. The federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013); *Chrysler v. Guiney*, 806 F.3d 104, 116-17 (2d Cir. 2015). "Clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412-13.

A state prisoner must therefore show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2. Analysis

*Batson v. Kentucky*, 476 U.S. 79 (1986) and its progeny, prohibit discrimination in the exercise of peremptory challenges to exclude jurors based on race, ethnicity, or gender. *Rivera v. Illinois*, 556 U.S. 148, 153 (2009). The Supreme Court has held that "there is no freestanding constitutional right to peremptory challenges." *Id.* at 157; *accord Belgrave v. Graham*, No. 10-CV-5168, 2017 WL 4736731, at *2 (E.D.N.Y. Oct. 19, 2017); *Boston v. Brown*, No. 10-CV-1494, 2014 WL 726683, at *11-12 (E.D.N.Y. Feb. 24, 2014). As long as the jury was "composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern . . . [and is] for the State to address under its own laws." *Rivera*, 556 U.S. at 157-58; *see also Hayes v. Conway*, No. 07-CV-3656, 2009 WL 320188, at *1 (2d Cir. Feb. 10, 2009) (summary order) ("[A]bsent allegations that the petitioner was denied his right to an impartial jury, the loss of a peremptory challenge alone does not implicate his Sixth Amendment rights."); *Pinto v. Walsh*, No. 09-CV-05419, 2014 WL 2594416, at *2 (E.D.N.Y. June 10, 2014).

The petitioner's claim that the trial court was wrong to deny his peremptory challenge to Mr. Moy does not implicate a federal constitutional right and does not provide a basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations omitted). There is no evidence that any of the jurors, including Mr. Moy, were unqualified or biased; indeed, counsel did not challenge any of the jurors, including Mr. Moy, for cause. *See, e.g., Sancho v. Smith*, No. 16-CV-868, 2016 WL 1171592, at *2 (E.D.N.Y. Mar. 24, 2016); *Boston*, 2014 WL 726683, at *12.

In any event, the Second Department's decision was not "contrary to" or an "unreasonable application of" clearly established Federal law nor "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). In *Batson*, the Supreme Court established a three-step inquiry to determine whether a party's peremptory challenge is based on a juror's race or ethnicity: the party objecting to the peremptory challenge must make a *prima facie* case that the peremptory challenge is race-based; then, the party making the peremptory challenge must state a race-neutral reason for the challenge; finally, the court must determine whether the opposing party established by a preponderance of the evidence that the challenge was based on race and that the assertedly race-neutral reason was merely pretextual. *McKinney v. Artuz*, 326 F.3d 87, 98 (2d Cir. 2003) (citing *Batson*, 476 U.S. at 96-98) (parallel citation omitted).

The Second Department held that defense counsel's race-neutral explanation at step two of the *Batson* analysis—that "[n]o one seemed to ask [the juror] anything," that she did not ask the potential juror many questions, and that she "didn't get enough about [the juror]"—"amounted, essentially, to no reason at all." *Rivera*, 116 A.D.3d at 718 (citing *People v Erskine*, 90 A.D.3d 674, 674-675 (2d Dep't 2011)) (parallel citations omitted). In other words, the court found that defense counsel stated no reason whatsoever for her challenge to Mr. Moy. The trial court did not need to reach step three, and "properly disallowed the defendant's peremptory challenge." *Rivera*, 116 A.D.3d at 718; *see People v. Allen*, 86 N.Y.2d 101 (1995) (At step two, "if the [striking party] offers no explanation, the [party making the *Batson* challenge] has succeeded in meeting the ultimate burden of establishing an equal protection violation.")

The petitioner claims that his attorney's proffered explanation was sufficiently race-neutral, and the prosecutor should have had to rebut it. (ECF No. 1-2 at 5.) But as the Second Department found, defense counsel had no explanation for her challenge to Mr. Moy. This

7

decision was supported by the record. Judge Buchter, who had accepted counsel's challenges to every other Asian juror, pressed counsel for a reason about Mr. Moy: "I am asking about any— you have nothing." (V. 169.) Defense counsel answered, "No." (V. 169-70.) Viewed in context—where counsel challenged every Asian juror—the court's decision to seat Mr. Moy was reasonable. A federal district court on habeas review should not disturb a state court decision unless "there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015); *accord Harrington*, 562 U.S. at 98. The Second Department's decision was not contrary or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts. The petition is denied.

## CONCLUSION

Accordingly, the petition for writ of habeas corpus is denied in its entirety. The case is dismissed; and a certificate of appealability will not be issued. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

s/Ann M. Donnelly<br>
The Honorable Ann M. Donnelly<br>
United States District Judge

Dated: Brooklyn, New York
September 25, 2018